UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RICHARD W. THOMASON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CASE NO. 2:14-CV-01725-SLB** |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Richard W. Thomason brings this action pursuant to 42 U.S.C. § 405(g),[1] seeking review of the Commissioner of Social Security's final decision denying his application for supplemental security income ["SSI"]. Upon review of the record, the relevant law, and the arguments of counsel, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Mr. Thomason initially filed an application for SSI on August 23, 2011. (Doc. 6-3 at R.23.)[2] His claim was denied initially. (*Id*.) Thereafter, he requested a hearing before an

---

[1]The judicial review provision for a disability insurance benefits claims, 42 U.S.C. § 405(g), also applies to claims for SSI, *see* 42 U.S.C. § 1383(c)(3).

[2]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record. Reference to a page numbers in the Commissioner's record, ["R.___"], refers to the page number assigned to the record by the Commissioner.

Administrative Law Judge ["ALJ"]. (*Id.*; doc. 6-5 at R.70.) A video hearing was held on December 19, 2012, with Mr. Thomason appearing in Cullman, Alabama, and the ALJ presiding from Florence, Alabama. (Doc. 6-3 at R.23.) After the hearing, the ALJ found that Mr. Thomason was capable of performing "other work that exists in significant numbers in the national economy." (*Id*. at R.38.) In light of this finding, the ALJ denied Mr. Thomason's claim for SSI on February 8, 2013. (*Id.*)

Mr. Thomason then asked the Appeals Council to review the ALJ's decision. (*Id*. at R.18.) On July 12, 2014, the Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision. Therefore, [it] denied [Mr. Thomason's] request for review," and the ALJ's decision became the final decision of the Commissioner. (*Id*. at R.1.)

The present appeal was filed on September 8, 2014. (Doc. 1.) In his Brief, Mr. Thomason alleges, generally, that "the ALJ failed to properly evaluate the credibility of [Mr. Thomason's] testimony of disabling symptoms consistent with the Eleventh Circuit Pain Standard." (Doc. 11 at 3-4).

## II. STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court's role is a narrow one: "Our review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221

(11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). It "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner], rather [it] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)(quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983))(internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence" is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)(internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius,* 936 F.2d at 1145. "No . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

**A. THE FIVE-STEP EVALUATION**

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for SSI. *See* 20 C.F.R. § 416.920(a)(1)-(2);

*Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "[A]n individual shall be considered to be disabled for purposes of [determining eligibility for SSI benefits] if [he] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[3] 20 C.F.R. § 416.972. If the claimant is working and that work is substantial gainful activity,

---

[3]The regulation provides:

(a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 416.972.

the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or his age, education, and work experience. 20 C.F.R. § 416.920(b). "Under [this] first step, the claimant has the burden to show that [he] is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 Fed. Appx. 862, 863 (11th Cir. 2012).[4]

The ALJ found that Mr. Thomason had not engaged in substantial gainful activity since August 23, 2011, the application date. (Doc. 6-3 at R.25.)

**2. Severe Impairments**

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and

---

[4]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. ***Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority***." 11th Cir. R. 36-2 (emphasis added).

are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 416.920(c). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 416.921(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 416.923. A claimant has the burden to show that he has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Thomason had the severe impairment of "history of Kyphoplasty[5] at T12/L1 on February 10, 2011." (Doc. 6-3 at R.25 [footnote added].)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement[6] and whether it is

---

[5]"Kyphoplasty is a . . . procedure to treat spinal compression fractures, whereby a surgical instrument is introduced into the spine with a balloon that is inflated to expand the bone. Once this instrument is withdrawn, the space created is then filled with the bone cement mixture." *Brozyna v. Niagara Gorge Jetboating, Ltd.*, No. 10-CV-602-JTC, 2011 WL 4553100, at *2 n.1 (W.D.N.Y. Sept. 29, 2011)(internal quotations and citations omitted).

[6]"Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement." 20 C.F.R. § 416.909.

equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of his age, education, and work experience. 20 C.F.R. § 416.920(d). The claimant has the burden of proving that his impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Thomason did not have an impairment or combination of impairments that met or medically equaled a Listing. (Doc. 6-3 at R.26.)

**4. Residual Functional Capacity and Past Relevant Work**

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that his impairment prevents him from performing his past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity [RFC] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [him] to learn to do it. 20 C.F.R. § 416.960(b)(1). If the claimant is capable of performing his past relevant work, the Commissioner will find he is not disabled. 20 C.F.R. § 416.920(e). The claimant bears the

burden of establishing that the impairment prevents him from performing past work. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that Mr. Thomason had the following RFC:

> . . . [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b)[7] except claimant can occasionally lift and carry twenty pounds and frequently ten pounds. The claimant is able to sit, stand, and walk approximately six hours during an eight-hour workday. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant has no manipulative, visual, or communicative limitations. The claimant should [avoid] all exposure to hazardous machinery and unenclosed heights.

(Doc. 6-3 at R.27 [footnote added].) The ALJ also found that Mr. Thomason "was born [in] April . . . 1961 and was 50 years old . . . on the date the application was filed," and he had a limited education and could communicate in English. (*Id*. at R.37.

The ALJ found that Mr. Thomason could not perform his past relevant work as a painter or construction worker. (*Id*.)

---

[7]Section 416.967(b) provides:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . .

20 C.F.R. § 416.967(b).

### 5. Other Work in the National Economy

If the claimant establishes that he is unable to perform his past relevant work, the Commissioner must show that the claimant – in light of his RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 Fed. Appx. at 863; *see also* 20 C.F.R. § 416.920(c)(1). The regulations provide:

> If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience. Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 416.960(c)(1).

Because the ALJ found Mr. Thomason could not perform a full range of light work, he consulted a Vocational Expert [VE] to determine whether any jobs exist in the national economy that Mr. Thomason, considering his RFC and other vocational factors, could perform. The VE testified that an individual with Mr. Thomason's limitations and vocational factors could perform the "light" jobs of hand packager, inspector, and gluer. (Doc. 6-3 at R.55-56.) Based on this testimony, the ALJ found that Mr. Thomason could perform other work, and, therefore, had not been under a disability since August 23, 2011. (*Id*. at R.38.)

### B. ISSUE ON APPEAL

Mr. Thomason contends that "the ALJ failed to properly evaluate the credibility of [Mr. Thomason's] testimony of disabling symptoms consistent with the Eleventh Circuit Pain Standard." (Doc. 11 at 3-4). Based on the record, the court finds that the ALJ properly applied the pain standard and that the record contains substantial evidence to support the ALJ's credibility findings.

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529. When the objective medical evidence does not confirm the severity of the alleged pain, the question becomes whether the underlying medical condition could reasonably be expected to give rise to the alleged pain. *Id*. This determination is a question of fact for the ALJ, subject to the substantial evidence standard of review. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988).

Because the application of this standard often requires a credibility assessment, the ALJ's reasons for discrediting the claimant's testimony must be premised on substantial evidence and be sufficiently explicit. *See e.g., Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992); *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). The

determination of credibility is reserved solely for the Commissioner and is not a proper function for the courts. *Daniels v. Apfel*, 92 F. Supp. 2d 1269, 1280 (S.D. Ala. 2000)(citing *Grant v. Richardson*, 445 F.2d (5th Cir. 1971)).[8] When the Commissioner states a clear finding of credibility, it should not be disturbed unless it is not supported by substantial evidence. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

In applying the pain standard, the ALJ must explicitly articulate his reasons for rejecting the claimant's subjective complaints of pain; if the ALJ fails to properly articulate his reasons for discrediting the claimant's subjective complaints of pain, the court must accept the testimony as true. *Hale v. Bowen*, 831 F.3d 1007, 1012 (11th Cir. 1987).

The court finds that the ALJ properly applied the pain standard. In his decision, the ALJ found, "After careful consideration of the evidence, . . . the claimant's medically determinable impairments could reasonably be expected to cause symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (Doc. 6-3 at R.33.) In making his findings, the ALJ discussed inconsistencies in Mr. Thomason's testimony regarding his pain, as well as addressing Mr. Thomason's history of conservative medical treatment and medical testing showing mild to moderate symptoms. (*Id*. at R.33-34.) The court finds the ALJ clearly identified, and properly applied, the appropriate legal standard.

---

[8]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

Mr. Thomason also argues, "The ALJ sets forth several reasons for failing to credit the Plaintiff's testimony of disabling symptoms, none of which are supported by substantial evidence of record." (Doc. 11 at 5.) The court disagrees.

**1. MRI Results**

In support of his contention that the ALJ's credibility determination is not supported by substantial evidence, Mr. Thomason argues:

> The ALJ references the MRI of August 3[,] 2011[,] but does not take into account all of the abnormalities documented by that MRI. (R.34). That MRI documented the presence of mild compression fracture [deformities] at T12-L1 and mild amount of residual edema; <u>multi-level spondylosis</u> with fluid most prominent in the facets at L3-4 and posterior central <u>annual tears at L4-5 and L5-S1</u>. (R.236, 237, emphasis added). Despite, these objective findings, the ALJ places emphasis on what the MRI notes as "mild" compression fracture, residual edema and lateral recess encroachment. (R.34). He completely disregards the presence of multi-level spondylosis and annual tears which could reasonably cause the pain and limitations testified to by the Plaintiff. That blatant disregard is evident from the ALJ's failure to include those documented impairments as severe in his decision.

(Doc. 11 at 6.)

Mr. Thomason's contention that the ALJ "completely disregard[ed]" portions of the MRI results, (*id.*), is rebutted by the ALJ's Decision, which sets forth ***all*** the findings from the MRI, (*compare* doc. 6-3 at R.34, R.36 *with* doc. 6-8 at R.236-37). Moreover, Mr. Thomason argues that the ALJ disregarded the findings of the MRI because he did not include the diagnoses of multi-level spondylosis and posterior central annual tears as severe impairments at step two of the sequential analysis. (Doc. 11 at 6.) The law is well established that "the finding of any severe impairment, whether or not it qualifies as a

12

disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)(citing, *inter alia*, *Cantrell v. Bowen*, 804 F.2d 1571, 1573 (11th Cir. 1986); *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The ALJ found Mr. Thomason had a severe impairment – kyphoplasty at T12-L1. Therefore, the ALJ moved past step two and considered Mr. Thomason's condition as a whole at the later steps of the sequential analysis. *See id*. (citing *Hudson v. Heckler*, 755 F.2d 781, 785 & n.2 (11th Cir. 1985); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Mr. Thomason argues that he is disabled due to back pain. (Doc. 11 at 4.) There is no question that the ALJ thoroughly considered Mr. Thomason's complaints of disabling back pain – whether he found the pain was caused by his prior back surgery or some other spinal "deformity." Therefore, the court finds no basis for reversing the Commissioner's decision based on the ALJ's failure to consider the August 2011 MRI.

**2. Dr. DeLoach's Examination**

Mr. Thomason argues:

> Another example of the ALJ selectively choosing isolated notations to support his finding is evident from his interpretation of the Plaintiff's examination by Dr. DeLoach. (R.34). The ALJ implicitly noted this exam was normal. (R.34). However, he disregards notations from that examination which show the Plaintiff was limited due to his back pain. (R.34, 265). For example, Dr. DeLoach noted the Plaintiff was able to get on and off the examination table without any problems, however, it required <u>some effort to get up and out of the chair</u>. (R.265, emphasis added). Further, it was noted the Plaintiff was able to dress himself but "<u>had to sit or hold on to something</u>." (R.265, emphasis added). The ALJ's reasoning is not supported by substantial evidence as he

13

chose isolated notations to support his findings and ignored the medical record as a whole which would lead a rational fact finder to a contrary conclusion.

(Doc. 11 at 6-7.)

"In determining whether substantial evidence exists, the Court must also consider evidence that is favorable as well as unfavorable to the Commissioner's decision. . . . [T]he Commissioner's findings must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence." *Lynch v. Astrue*, 358 Fed. Appx 83, 86 (11th Cir. 2009)(citing *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986); *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986)). Dr. Deloach's report at issue stated that Mr. Thomason "require[d] some effort" to "get up and out of a chair;" however, he was able to get on and off the examining table "without any problems." (Doc. 6-8 at R.265.) He also noted that Mr. Thomason "had to sit or hold something" to get dressed. (*Id.*.) The ALJ did not ignore this evidence; to the contrary, he expressly noted these statements in his decision.[9] (Doc. 6-3 at R.34 .) Certainly,

---

[9]The ALJ stated:

On October 22, 2011, consultative examiner, Victor DeLoach, M.D., examined the claimant. During Dr. DeLoach's examination, he observed that the claimant's ambulation was **normal**. He was able to get on and off the examination table without any problems. He got up and out of the chair, but required some effort. He was able to dress himself, but had to sit or hold on to something. His lungs were clear and his heart normal. His abdomen was normal. There was no clubbing or cyanosis noted. His gait was **normal**. Range of motion of his cervical spine was normal. He had decreased range of motion of his lumbar spine. His straight leg raise was seventy in the supine position and eighty in the sitting position. However, he was able to walk on

14

the ability to get on and off the examining table appears inconsistent with the inability to rise from a chair without effort or to stand while getting dressed. Nevertheless, the court finds that the ALJ expressly considered this evidence in determining that Mr. Thomason's back pain was no more than moderate. (Doc. 6-3 at R.34, R.36.) Moreover, the ALJ discussed other medical reports and examination notes in the record. Therefore, the court finds that Mr. Thomason's claim that the ALJ chose isolated notations to support his decision and ignored other evidence is not supported by the record.

### 3. Conservative Treatment

Mr. Thomason contends that the ALJ's finding that his claims of disabling back pain were negated by his conservative treatment is as mischaracterization of the evidence and is not supported by substantial evidence. (Doc. 11 at 7 [citing doc. 6-3 at 35].) The court disagrees. The ALJ held:

> Moreover, while the evidence shows that the claimant has had fairly extensive treatment for his back pain, he has been treated conservatively with medication only, which negates the severity of this condition. The claimant received treatment at Med Assist from August 15, 2011 until November 14, 2012 for hypertension, anxiety, and back pain. The claimant was diagnosed with hypertension and chronic low back pain from failed back surgery. He was always treated with medication, with the exception of the claimant receiving one injection (Exhibits 4F, 6F, and 13F). From November 28, 2011 until

---

his heels. He could not squat, but he could toe walk. **The claimant was neurologically intact**. Dr. De Loach concluded that the claimant's straight leg test and flexion of his back was abnormal, but his range of motion was **normal** in the majority of his joints, (Exhibit 7F)(emphasis added).

(Doc. 6-3 at 34 [emphasis in original]; *see also id.* at 36.)

15

> November 14, 2012, the claimant was diagnosed with [paraspinal] tenderness in the lumbar spine and given a refill of his medication (Exhibit 13F). Hence, it is safe to assume that the claimant's condition was not severe enough to warrant more aggressive treatment. The lack of more aggressive treatment is further evidenced by the fact that the claimant stated that the medication was working. On September 18, 2012, the claimant reported to Med Assist for back pain and anxiety. The claimant wanted a refill . . . on his medications. He stated that the medications were working well. He underwent a physical examination where it was noted that the claimant had tenderness in his lumbar spine, but [the examination was] otherwise unremarkable. The claimant was diagnosed with generalized anxiety disorder and failed back syndrome. His medications were refilled and it was noted that his condition was controlled (Exhibit 13F).

(Doc. 6-3 at 35.)

The court has carefully reviewed the entire record and concludes that the ALJ properly characterized Mr. Thompson's complaints and his treatment. Although his treatment for back pain was extensive, it was conservative following his kyphoplasty, consisting of prescription medications and one injection. The court finds no reversible error.

**4. Dr. Heilpern's Opinion**

Mr. Thompson argues that the ALJ erred in giving great weight to the opinion of the state reviewing physician, Dr. Heilpern. (Doc. 11 at 8.) He contends, "Dr. Heilpern's opinion is inconsistent with the treating records documenting abnormal physical findings as well Dr. DeLoach's observations that the Plaintiff required 'some effort to get up and out of the chair' and 'had to sit or hold on to something' when getting dressed." (Doc. 11 at 8 [citing R.253, 262, 265, 308] [emphasis deleted].)

> In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether an

16

>
> opinion is amply supported, whether an opinion is consistent with the record and the doctor's specialization. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion. *Id*. §§ 404.1527(d)(4), 416.927(d)(4). Usually, the opinions of treating physicians are given more weight than non-treating physicians, and the opinions of examining physicians are given more weight than non-examining physicians. *See id*. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). A non-examining doctor's opinion that contradicts an examining doctor's medical report is accorded little weight and cannot, standing alone, constitute substantial evidence. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir.1991). However, the ALJ may rely on a non-examining physician's opinion if it does not contradict the examining physician's medical findings or test results in the medical report. *See id*. at 585.

*Flowers v. Comm'r of Soc. Sec.*, 441 F. Appx 735, 740 (11th Cir. 2011).

The ALJ found that Dr. Heilpern's opinion was consistent with the medical records, including the August 2011 MRI and Dr. Deloach's report. (Doc. 6-3 at 36.) The court agrees. Indeed, contrary to Mr. Thomason's assertion, Dr. Heilpern's reports specifically refers to Dr. DeLoach's observations regarding Mr. Thomason's difficulty with rising from a chair and difficulty in dressing himself while standing; he also notes that Dr. DeLoach observed Mr. Thomason had no difficulty getting on and off the table and other findings regarding Mr. Thomason's claim of disabling back pain. (*See* doc. 6-8 at R.270, 273.) Mr. Thomason has not shown that the ALJ erred in assigning great weight to Dr. Heilpern's opinion.

Thus, based on its review of the administrative record, the court finds that the ALJ's factual findings are supported by substantial evidence and that he correctly applied the law

17

to those facts. Therefore, the Commissioner's decision denying Mr. Thomason's claim for SSI will be affirmed.

## **CONCLUSION**

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 22nd day of February, 2016.

*Sharon Lovelace Blackburn*
_____
SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE